# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

ANTONIO BABIN DE JESUS,
    Plaintiff,

v.

CONFESOR LASALLE RUIZ, *et al.*,
    Defendants.

Civil No. 15-2231 (BJM)

## OPINION AND ORDER

Plaintiff Antonio Babin de Jesus seeks to recover an unpaid balance of $137,000 on a contract he entered into with defendants Confesor LaSalle Ruiz, Diana Nieves Curbelo, and Conjugal Partnership LaSalle-Nieves (collectively "defendants"). Docket No. 25 at 1–2. There is one hurdle, however: Antonio Babin, through his sister, amended the contract, agreeing to accept only $50,000 for the unpaid balance. Docket No. 25 at 4–5. Undeterred, Babin claims the amended contract is void for lack of consideration and duress. *Id*.[1] Defendants disagree and move for summary judgment. *See* Docket No. 68. Antonio Babin opposed. Docket Nos. 75. This case is before me on consent of the parties. Docket No. 33. For the reasons laid out below, defendants' motion for summary judgment is **GRANTED**.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A] 'genuine' issue is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). The court does not weigh the facts, but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Leary v. Dalton*, 58 F.3d

---

[1] Babin uses both the terms dolo and duress to address what appears to be a duress claim. *See* Docket No. 25 at 1–2, 5; Docket No. 75 at 1; Docket No. 77 at 8, 14. Defendants, at times, also address Babin's dolo claim as if it were a duress claim and not a fraud claim. *See* Docket No. 68 at 1–2.

748, 751 (1st Cir. 1995). Under Rule 56(a), summary judgement is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." *Donate-Romero v. Colorado*, 856 F.2d 384, 386 (1st Cir. 1988).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [evidence] . . . which it believes demonstrate the absence of a genuine issue of material fact." *Crawford-El v. Britton*, 523 U.S. 574, 600 n.22 (1998) (quoting *Celotex Corp.* v. *Catrett*, 477 U.S. 317, 323 (1986)); Fed. R. Civ. P. 56(c)(1). Once this threshold is met, the burden shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," though an evaluating court may not "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the facts of the record." *Leary*, 58 F.3d at 751; *Greenburg v. P.R. Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987).

## BACKGROUND

Except where otherwise noted, the following facts are drawn from the parties' Local Rule 56[2] submissions: LaSalle's Statement of Uncontested Facts ("LSUF"), Docket No. 70, and Babin's response to LaSalle's Statement of Uncontested Facts ("RSUF"), Docket No. 77. The facts giving rise to this case are largely undisputed.

---

[2] Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." *CMI Capital Market Inv. v. Gonzalez-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record, that the movant contends are uncontested and material. D.P.R. Civ. R. 56(b), (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. *Id.* 56(c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. *Id.* 56(c). While the "district court may forgive a party's violation of a local rule," litigants ignore the Local Rule "at their peril." *Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 219 (1st Cir. 2007).

Confesor LaSalle and his wife purchased Antonio Babin's stake in Angeles Divinos Home Health Services, Inc. ("Angeles Divinos") for $225,000 in June of 2012. LSUF ¶ 1. The money was to be paid in multiple installments. Docket No. 89-1 at 2. Twenty-five thousand dollars was to be paid at the signing of the original contract, with another $25,000 to follow one year later, and then the remaining $162,000 to follow one year after that (two years after the signing of the original contract). *Id.* The original contract further stated "[t]hat the shares represented by the certificate transferred here have not been seized, pledged, mortgaged, or encumbered in any way or form." *Id.* On June 24, 2013, Antonio Babin was arrested in Arkansas on drug-related charges. RSUF ¶ 8. Defendants admit that they were contractually obligated to pay Antonio Babin $25,000 as part of the sale of Angeles Divinos on June 26, 2013. LSUF ¶¶ 1, 6. Defendants also do not deny that they failed to make the June payment, seemingly citing Antonio Babin's arrest as the reason for the missed payment. LSUF ¶¶ 7–8.

After his arrest, Antonio Babin gave his sister Maria Babin power of attorney so that she could collect the missed second payment of $25,000 or the total amount remaining from the sales contract for the shares of Angeles Divinos. RSUF ¶¶ 9–10. Maria Babin, acting as Antonio Babin's attorney, then hired Jamie Alcover to renegotiate the remaining payments from the sale of Angeles Divinos. RSUF ¶ 18.

Alcover discussed Maria Babin's desire to amend the sales contract for Angeles Divinos with LaSalle's attorneys. RSUF ¶ 21. Alcover then reported back to Maria Babin that LaSalle was willing to pay $50,000 to settle the remaining debt for the sale of Angeles Divinos. RSUF ¶¶ 24, 28. Defendants claim that their settlement proposal was less than the remaining amount due from the original sale of Angeles Divinos because of a possible fraud issue: defendants claim that Antonio Babin had not disclosed that he had sold part of Angeles Divinos to Robert Campbell before selling the company to defendants. RSUF ¶¶ 24–25.

Antonio Babin believes that Alcover lied to his sister when relaying the information regarding the offer to settle the debt for $50,000 because Alcover told her that LaSalle might file for bankruptcy. Docket No. 69-1 at 8. Defendants claim that Maria Babin was mistaken as to which

party was possibly going bankrupt. LSUF ¶¶ 36–38. From the materials presented to the court, it is unclear whether any party actually did file for bankruptcy.

Maria Babin signed the amended contract after consulting with her sister, Mercedes Babin. RSUF ¶ 32. On the same day that she signed the amended contract, Maria Babin realized that Alcover had "deceived her" because he had also been paid a fee by Confesor LaSalle. Docket No. 69-2 at 6, 9.

## DISCUSSION

Antonio Babin claims that there was no consideration for the amendment of the contract such that a binding new contract was never created. Docket Nos. 25 ¶ 22; 75 at 6–7. Babin further alleges that even if the amended contract did have consideration, it should be nullified because it was signed under duress.³ Docket Nos. 25 ¶¶ 22–23, 34–35; Docket No. 75 at 4–6. Defendants have moved for summary judgment on Babin's breach of contract and duress claims although they have not addressed his claim that the amended contract is void for lack of consideration. Docket No. 68 at 2, 9.

Puerto Rico law dictates that a valid contract is created through: "(1) the consent of the contracting parties; (2) a definite object which may be the subject of the contract; [and] (3) the cause for the obligation which may be established," otherwise known as consideration. P.R. Laws Ann. tit. 31, § 3391; *see Luis Santiago v. Santiago*, 731 F. Supp. 2d 202, 207 (D.P.R. 2010) ("A contract regardless of its type 'has three elements: consent, a definite (and legal) object, and consideration.'" (quoting *Citibank Glob. Markets, Inc. v. Rodriguez Santana*, 573 F.3d 17, 23–24 (1st Cir. 2009))). For the consideration to be valid, it must be the product of a bargained-for exchange. *Id.* (quoting *P.R. Power Auth. v. Action Refund*, 472 F. Supp. 2d 133, 137 (D.P.R. 2006)). This exchange is defined as "something . . . done, foreborne, suffered, or undertaken by one party at the request of another, which is made the foundation of the promise of that other." *Action Refund*,

---

³ Babin continually uses the terms "dolo" and "duress" interchangeably. *See* Docket No. 75 at 1. I will address the possible grounds for a dolo claim, also known as deceit, after I analyze Babin's duress claim.

472 F. Supp. 2d at 138 (quoting Sir William Markby, *Elements of Law* 307–17 (6th ed. 1905)). "As a general principle of contract law, 'courts will not inquire into the adequacy of consideration in an agreed-upon exchange, unless that consideration is so grossly inadequate as to shock the conscience of the court.'" *Burk v. Paulen*, 100 F. Supp. 3d 126, 133 (D.P.R. 2015) (quoting *Action Refund*, 472 F. Supp. 2d at 64)).

Furthermore, duress and intimidation are synonyms according to Puerto Rico law. *Dopp v. HTP Corp.*, 947 F.2d 506, 510 (1st Cir. 1997). And consent to a contract will be deemed void if it was the product of error, violence, intimidation, or deceit, even if the intimidation was employed by an individual who was not party to the contract. 31 L.P.R.A. §§ 3404, 3407; *Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.*, 954 F. Supp. 438, 450 (D.P.R. 1996), aff'd sub nom. *Garita Hotel Ltd. P'ship v. Ponce Fed. Bank*, 122 F.3d 88 (1st Cir. 1997).

Antonio Babin did not specifically plead duress in his amended complaint; instead, he seemingly used the term "dolo" in its place. *See* Docket No. 25 ¶ 22. However, in his opposition to defendants' motion for summary judgment, he states that his sister, Maria Babin, who was acting as his attorney at the time, signed the amended contract under duress. Docket No. 75 at 1–2. Babin also continually refers to his duress claim in his response to LaSalle's Statement of Uncontested Facts. *See* LSUF ¶¶ 21–22, 24, 33–34. Defendants contend that Maria Babin was never "misled, threatened, or duped" into signing the amended contract. Docket No. 68 at 9, 11. Antonio Babin claims that there was duress because defendants breached their obligation of good faith by falsely stating that Angeles Divinos was on the verge of bankruptcy in order to convince Maria Babin to sign the amended contract. Docket No. 75 at 5.

"Intimidation exists when one of the contracting parties is inspired with a reasonable and well-grounded fear of suffering an imminent and serious injury to his person or property, or to the person or property of the spouse, descendants, or ascendants." *See* 31 L.P.R.A. § 3406; *Soto v. State Chemical Sales Co. Intern., Inc.*, 719 F. Supp. 2d 189, 193 (D.P.R. 2010). An intimidation claim has five elements: "a state of apprehension that compels consent, the apprehension is provoked by the actions of another person, the apprehension must be rational [or reasonable] and

well-grounded, the apprehension refers to an injury that the subject will suffer unless he or she enters into the contract, and the intimidatory actions must be antijuridical." *Garita Hotel*, 954 F. Supp. at 450. In assessing the third prong—whether the apprehension caused by the threat is well-grounded—the court should consider "the means with which the alleged intimidator could carry out his or her threat." *Id.* at 451.

If a party has numerous opportunities to consider the details of a contract, along with the time and resources to calmly consider his options, that will weigh heavily against a finding of intimidation. *Soto*, 719 F. Supp. 2d at 193. Seemingly willful negligence on behalf of the party claiming intimidation will also weigh against finding intimidation. *See Sanchez-Santiago v. Guess, Inc.*, 512 F. Supp. 2d 75, 79 (D.P.R. 2007) (no intimidation when plaintiff was not prevented from seeking assistance to understand the wording of a contract that she admittedly did not comprehend, when plaintiff did not pose any questions about the contract to any of the attorneys present at signing, and when her main evidence that she had been intimidated was that plaintiff claimed the atmosphere at the contract signing made her feel "rushed"). As Antonio Babin is seeking to nullify an otherwise valid contract, he bears the burden of proving that duress occurred. *Garita Hotel Ltd. P'ship*, 954 F. Supp. at 450 ("Because the action for nullity is an independent cause of action, the burden of proof is on the party alleging that the contract is null because of the existence of any of the vices of consent.").

Antonio Babin's duress claim fails the well-grounded apprehension test under *Garita* for determining whether a threat should cause duress because it appears from the pleadings that Alcover did not have the means to make Angeles Divinos declare bankruptcy. *Garita Hotel Ltd. P'ship*, 954 F. Supp. at 451. Alcover mentioned to Maria Babin that Antonio Babin could receive no further compensation for the sale of Angeles Divinos because Babin had possibly engaged in fraud when he originally sold the company to LaSalle. RSUF ¶¶ 26–27. Alcover also mentioned to Maria Babin that Angeles Divinos might have to declare bankruptcy because of Antonio Babin's fraudulent conduct. RSUF ¶ 30, 36; Docket No. 69-2 at 5. However, even if this is viewed as a threat to the Babins, Alcover was Maria Babin's attorney; he was not an employee or officer of

Angeles Divinos with power over its assets. RSUF ¶ 18. As such, the Babins could not have had a well-grounded fear that Alcover had the means to make Angeles Divinos declare bankruptcy.

Furthermore, Maria Babin had time to consult with family members regarding the terms of the amended contract and the situation she was facing. RSUF ¶¶ 17, 32. She also had time to get a second opinion on the terms of the contract but did not because it simply never occurred to her to do so. Docket No. 70-10 at 22. In *Sanchez-Santiago*, the plaintiff was given the opportunity to seek assistance when reviewing a contract and did not ask questions about the contract that she was signing because she was in a hurry. *Sanchez-Santiago* 512 F. Supp. 2d at 80. The court found that the plaintiff was not subjected to duress but rather acted negligently because she was not subjected to compulsion and did not ask any questions about the contract before signing it. *Id.* at 79–80. Here, Maria Babin was not subjected to compulsion, and she seems to have misunderstood which party, either LaSalle or Angeles Divinos, was under the threat of bankruptcy:

> Q. Who told you Angeles Divinos was the one that was going bankrupt?
> A. Was going to declare bankruptcy? Jamie Alcover.
> Q. But at that point did you know that the party that owed . . . the party that had to pay the money was Confesor LaSalle and not Angeles Divinos?
> A. I understand what you're saying. But at that point in time, no. I wasn't separating them. I thought in those one are the same. I can tell you that I thought that Confessor LaSalle, if Angeles Divinos was bankrupt I don't know that is not Angeles Divinos. I'm thinking "this man is the owner and if this goes bankrupt then there is no money."

Docket No. 70-10 at 25. Even if she did believe that it was LaSalle rather than Angeles Divinos who may be at risk of bankruptcy, she made no effort to clarify her muddled conception of the state of affairs or confirm with LaSalle, who was present at the signing of the amended contract, that he was in fact going bankrupt before signing the amended contract. LSUF ¶ 47. Therefore, because Maria Babin's actions seem just as negligent as the plaintiff's actions in *Sanchez-Santiago*, and because Antonio Babin's only evidence for his duress claim is Alcover's suggestion or incredible threat that Angeles Divinos might go bankrupt, no reasonable jury could find that the contract was signed under duress. RSUF ¶¶ 37, 42.

For much the same reasons, Antonio Babin has failed to raise a genuine issue that the amended contract is void for "dolo." Under Puerto Rico law, fraud that affects a contracting party is known as "dolo" or deceit. *P.C.M.E Commercial SE v. Pace Membership Warehouse*, 952 F. Supp. 84, 92 (D.P.R. 1997). There is dolo in the formation of a contract when by "words or insidious machinations on the part of one of the contracting parties the other is induced to execute a contract which without he would not have made." *Id.*; *see* 31 L.P.R.A. § 3408. Furthermore, the Supreme Court of Puerto Rico has made it clear "that good faith on the part of contracting parties is 'always presumed,' and one seeking to rely on [deceit or] dolo to invalidate a contract must rebut the presumption of good faith with evidence of intentional fault or bad faith." *Huongsten Production Import and Export Co. Ltd. v. Sanco Metals LLC*, 810 F. Supp. 2d 418, 428 (D.P.R. 2011) (quoting *Citibank Global Markets, Inc. v. Rodriguez Santana*, 573 F.3d 17, 29 (1st Cir. 2009)). Thus, a claim of dolo must be proven by a preponderance of the evidence. *Portugues-Santana v. Rekomdiv Int'l*, 657 F.3d 56, 62 (1st Cir. 2011); *Garcia Lopez v. Mendez Garcia*, 2 P.R. Offic. Trans. 481 (1974) ("[W]e do not see a fundamental difference between the non presumption of fraud and the general rule requiring preponderance of evidence to establish a fact.")

Importantly, Antonio Babin does not refute defendants' characterization of events: when Maria Babin first contacted Alcover, she told him that her brother "desperately needed $50,000" for a criminal attorney. Docket No. 25 ¶ 17. Maria Babin then signed the amended contract, not out of fear of a looming bankruptcy, but because she had to take whatever defendants were offering in order to help her brother. RSUF ¶ 42. In fact, upon first being notified by Jamie Alcover that defendants were offering $50,000 in the amended contract, Maria Babin did not appear to be desperate to sign the amended contract; instead she responded to Alcover enthusiastically saying "That's great, but do you think you could get a little more, seventy-five thousand dollars, something like that?" RSUF ¶ 28. Indeed, Maria Babin only seems to have made her decision to sign the amended contract after her sister Mercedes Babin, told her to do so. LSUF ¶ 32; RSUF ¶ 32. Thus, no reasonable jury could conclude the amended contract was induced by deceit.

Antonio Babin also contends that the amended contract is null and void for lack of consideration. Docket No. 25 ¶¶ 22, 34–35. Defendants contend Babin's acceptance of a lower amount was given in exchange for a number of benefits, including the earlier receipt of $50,000 needed for attorney's fees and the resolution of the risk that the original agreement would be nullified because Babin had also sold shares to Campbell. Docket No. 68 at 10–12, 14. The record is clear, however, that the amended contract was the product of a bargained-for exchange; therefore, consideration was present.

In the amended contract, the original $225,000 purchase price of Angeles Divinos was negotiated down to $88,000 in exchange for an earlier payment than had originally been contracted for. Docket No. 25 ¶¶ 13, 29. By signing the amended contract (at the request of Antonio Babin), defendants gave up their legal right to pay at a later date. *See id.* Thus, a legal detriment was suffered by one party at the request of another in return for the promise of a release from a legal obligation; this exchange of a promise for a performance is valid consideration. *See Action Refund*, 472 F. Supp. 2d at 138.

Antonio Babin contends that applying the parol evidence rule dictates that there was no consideration for the amended contract because the clear wording of the amended contract makes no mention of any consideration being given in exchange for the reduced price of Babin's shares of Angeles Divinos. Docket No. 75 at 6. Babin essentially claims that the court must look only to the amended contract, and as the word "consideration" does not appear within its pages, then the court must assume that no consideration was proffered. *See id.* However, Puerto Rico law requires that the court must assume the exact opposite. In Puerto Rico, consideration is presumed to exist in contracts unless a debtor proves to the contrary. 31 L.P.R.A. § 3434. Thus, although Babin may have shown that the word "consideration" does not appear in the amended contract, he has not addressed the fact that, by agreeing to pay at an earlier date, defendants suffered a legal detriment as part of a bargained-for exchange. *See* Docket No. 75.

Furthermore, "[t]he Supreme Court of Puerto Rico has long held that 'consideration' includes any lawful 'benefit[ ] which one party . . . obligates himself to confer upon' the other."

*Caribbean Seaside Heights Props., Inc. v. Erikon LLC*, 867 F.3d 42, 45 (1st Cir. 2017) (quoting *Adria Int'l Grp., Inc. v. Ferre Dev., Inc.*, 241 F.3d 103, 107 (1st Cir. 2001)). Here, defendants obligated themselves to pay early, and Antonio Babin benefitted by receiving $50,000—money which Maria Babin claims Antonio Babin desperately needed to retain an attorney in his unrelated drug case. *See* Docket No. 25 ¶ 17. Thus, this court is left not only with the presumption that consideration existed in the instant case but also with clear case law counseling that the circumstances in which the amended contract was undertaken amounted to consideration.

As no reasonable jury could return a verdict for Babin on his lack of consideration claim, defendants' motion for summary judgment is granted.

## CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is **GRANTED**, and Antonio Babin's claims are **DISMISSED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of July, 2018.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge